In the Matter of the Estate of R. B. Neville, deceased.

## SUPREME COURT—IN BANCO.

### JULY TERM—1880.

*Harris, C. J., Judd and McCully, J.J.*

IN THE MATTER OF THE ESTATE OF R. B. NEVILLE, DECEASED.

ON APPEAL FROM THE PROBATE COURT.

THE GUARDIANS kept their wards' funds in their business, crediting no interest and expended the principal in maintaining the wards.
HELD, that this was without authority. The guardians ordered to pay over to the wards the principal sum charged to themselves when the trust began, less commissions.
The principles of Rosa B. Duncan's case reaffirmed.

BEFORE McCULLY, J., IN CHAMBERS.

On the application of Marcus R. Colburn, husband of one of the wards, for the settlement of the guardians' accounts.

It would appear that the guardians who were in the first place the executors of the will, settled the business of the estate by making collections and payment of liabilities, with the exception of the $1,000 mortgage. This was payable before the death of Neville, and in my own view ought to have been paid off by the executors. Their accounts show that they had enough cash to meet the note, or they might have sold the real estate, as it appears they applied to the Court for to do, but discontinued the proceedings. The executors and guardians had some business connection with Mr. Neville, and they kept the Kona property, leasing it to Mr. Cooper, with whom they had a business connection after the death of Neville, continuing a fire insurance on the building, and continuing to pay interest on the mortgage note. The

cash assets of the guardians appear to have been represented by a credit entry in the books of A. S. Cleghorn & Co. No interest has been entered on them; and, on the other hand, the executors and guardians charged no commissions. The rents have been credited, and out of the original fund as credited and the rents, payments have been made from time to time for the support of the wards to the date of filing the account. The items of expenditure seem proper and of reasonable amount, and it is right to say that the two wards, daughters of Neville, have been well brought up and educated.

The cash on hand when the executors rendered their account, September 15, 1870, was $1,705.13; but without charge of executors' commissions. At the rendering of the account, November 26, 1879, as ordered, the guardians charge the estate with a debit of $58.32, and there remains only the Kona property still mortgaged for $1,000. It is in evidence that property in that district will not bring as good a price now as it would when the executors took the estate; and it is evident that a wooden building is not worth so much by the ten years during which it has been subject to decay. I have, however, announced that I will not review the action of the executors in holding the house and land; and that as to the mortgage on which they have been paying interest, they must charge themselves with interest at the same rate, being one per cent. on the funds in their possession.

I feel it my duty to censure the mode of treating the estate. Trust funds should not be merged in the private business of trustees, but should be kept separate and invested in the best securities which the country affords. English authorities go further. Lord Kenyon, as cited in Story's Equity Jurisprudence, says: "It was never heard of that a trustee could lend an infant's money on private security. This is a rule that should be rung in the ears of every person who acts in the character of a trustee; for an act may very probably be done with the best and honestest intention, yet no rule

in a Court of Equity is so well established as this." See Section 1274.

I do not see how this case can escape the operation of the principles established in this Court in Rosa Bartlett Duncan's case, 3d Haw. Rep., 543. In that case the guardian merged the ward's estate with his own, and reared her. When called to account, he showed that he had merged and consumed her property, but claimed that he had incurred a greater expense than the income from the property, if it had been put at interest. He kept no accounts. Yet the Court held that he was responsible for the principal, if he had diminished or consumed it without license from the Court. This is an extremely simple rule and the only safe one for the property of minors. What a guardian may spend is the income, or so much thereof as may be required. He may not reduce the · principal, as he may not sell the real estate without license from the Court.

I therefore decide that the guardians hold now, *of this estate*, the sum which they charged to themselves at the rendering of accounts, *less*, however, the commissions which they had a right to charge.

A. S. Hartwell for petitioner.

S. B. Dole for guardians.

Honolulu, January 28, 1880,

---

IN THE SUPREME COURT IN BANCO, JULY TERM, 1880—HARRIS, C. J., JUDD AND McCULLY, J.J.

Having heard the arguments of counsel on both parts, and considered all the circumstances of the case, we find it is similar in every respect to that of Rosa Bartlett Duncan; and therefore feel obliged to adopt the foregoing decision of Mr. Justice McCULLY, as rendered in Chambers.

Decree affirmed.

A. S. Hartwell for petitioner.

S. B. Dole and Castle & Hatch for guardians.

Honolulu, August 12, 1880.