IN THE MATTER OF THE GUARDIANSHIP OF MARIA CONCEICAO PIRES, AN INSANE PERSON.

No. 2322.

SUBMITTED SEPTEMBER 8, 1938.          DECIDED SEPTEMBER 12, 1938.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE MATTHEWMAN IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY KEMP, J.

On December 3, 1924, Frank M. Pires was appointed guardian of the person and estate of his mother Maria Conceicao Pires, an insane person. His said ward died March 23, 1936, and shortly thereafter the guardian filed a petition for approval of his accounts and for discharge. No annual or other periodical accounts had been filed by the guardian.

The petition filed by the guardian contained no schedule of receipts and disbursements and no inventory as is ordinarily the case in the filing of accounts. The guardian, however, in his petition charged himself first with the receipt of $656.02 belonging to his ward, out of which he claimed credit for $57.70 disbursed in behalf of his ward. The petition further discloses that the guardian had received, in behalf of his ward, an additional sum of $1132.24, that being the sum to which the ward was entitled out of the estate of her deceased husband who died in Portugal some time prior to the death of the ward. He, however, claimed credit for the expenditure of said money as fol-

lows: $36.75 in the purchase and improvement of a burial plot where his father was buried in Portugal; the remainder of said $1132.24 he expended in the purchase of real estate situated in Portugal, title to which he had vested in a nephew of his deceased father with a life estate in a sister of his said father. All of said expenditures were made without authorization from the court.

John M. Pires, a son and heir-at-law of the deceased, contested the account as filed, particularly the disposition made of the $1132.24 above referred to.

The guardian attempted to justify his purchases of said real estate for the benefit of the relatives of his deceased father by a showing that his ward had lucid intervals and that during a lucid interval she instructed him to expend said money for the benefit of such of the relatives of her deceased husband as had assisted him in his last days.

The circuit judge after a hearing approved the expenditure of the $57.70 first set up by the guardian and also approved the expenditure of the $36.75 expended in the purchase and improvement of the burial plot where her deceased husband was buried but surcharged the guardian $1095.49, the amount which he expended out of the money of his ward in the purchase of real estate in Portugal, title to which was taken as above stated.

The guardian has appealed. Only one question is presented by the appeal, viz., may a guardian of an insane person justify the giving away of his ward's estate by showing that his ward had lucid intervals and that during a lucid interval the ward directed such disposition?

The circuit judge, in his discussion of the powers and duties of the guardian, said: "He had the care and custody of the person of the ward, and the management of her estate. The fact that the ward experienced lucid intervals, whether such covered a day, a week or a month, and during such intervals, attempted to authorize and empower her

guardian to do or not to do certain things, gave to the guardian no authority whatever. The law determines the guardian's power and authority; not the wishes and authorizations and ratifications of the insane ward. In this particular case the Court does not believe that the guardian has attempted to defraud anyone. The Court believes his intentions were good. However, if the principle of law advanced by counsel for the guardian is sound, the door to fraud would be thrown wide open." After disposing of and allowing the small expenditures set up by the guardian the court, in a discussion of the purchase of real estate in Portugal and paying for it out of moneys belonging to his ward, said: "In so far as concerns the expenditures of the guardian of funds in his hands belonging to the ward for the purchase of real property in Portugal (or elsewhere for that matter) and the guardian then deeding the property so purchased to one Antone da Costa Ferreira, a nephew of the deceased Antone M. Pires, this deed containing a provision that one Maria dos Anjos Tilheira, a sister of the deceased Antone M. Pires, should have the use and enjoyment of such property during her life time, the Court can not see its way clear to approve and allow. The guardian had no power or authority to buy this property; and, having purchased it, he had no power or authority, either with or without the consent of his ward, to convey it to third parties, and above all, without consideration. Even had the guardian first applied to the Court for leave to sell the Ward's real property, the Court could not have authorized a sale of the property to a prospective purchaser without a fair consideration. In other words, neither the guardian nor the Court can give away the property of a ward."

Chapter 142, R. L. 1935, sets forth in detail the powers and duties of the guardian in the management and disposition of his ward's estate and in every instance where the

guardian is authorized to dispose of the corpus of his ward's estate the authorization is upon obtaining a license therefor as provided by law or upon order of the probate judge after a hearing. These powers and duties of the guardian are to continue until the guardian shall be discharged according to law. As early as 1874 this court, in *In the Matter of the Guardianship of Rosa Bartlett Duncan,* 3 Haw. 543, held that "a guardian may not of his own authority encroach upon the principal of a ward's estate for the purpose of maintaining his ward, and it is imperative upon him to obtain the leave and direction of the Court before he can touch the principal for such purposes." The above holding was reaffirmed in *In the Matter of the Estate of R. B. Neville,* 4 Haw. 289. In each of the above cases the court was dealing with the guardianship of a minor but there is no difference between the powers and duties of the guardian of a minor and the powers and duties of the guardian of an insane person. To undertake to determine after the death of an insane ward whether or not said ward had at a time when enjoying a lucid interval disposed of her estate would, as the circuit judge held, throw wide open the door to fraud. When an insane ward has sufficiently recovered to be able to handle her own business affairs the guardian should be discharged. Until that is done we must assume that the ward is incapable of handling her own business affairs. If the guardian cannot encroach upon the principal of a ward's estate for the purpose of maintaining his ward certainly he cannot give it away. We therefore conclude that the circuit judge correctly ruled when he surcharged the guardian the money expended in the purchase of real estate in Portugal for the benefit of relatives of his deceased father.

The order appealed from is affirmed.

*E. R. Bevins* for appellant.

*A. E. Jenkins* for appellee.